UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
WAYCROSS DIVISION

| | |
|---|---|
| MARCUS DALE SPIVEY, ) | |
| ) | |
| Plaintiff, ) | Civil Action Number: |
| v. ) | |
| ) | |
| ELIXIR DOOR AND METALS ) | |
| COMPANY, a foreign corporation, and ) | JURY TRIAL DEMANDED |
| O. W. (BILL) BLACKMON, JR., ) | |
| an individual, ) | |
| ) | |
| Defendants. ) | |

## COMPLAINT

COMES NOW Marcus Dale Spivey ("Plaintiff"), by and through his undersigned counsel, and files this Complaint against Defendant Elixir Door and Metals Company ("Defendant Elixir") and Defendant O.W. (Bill) Blackmon ("Defendant Blackmon") (collectively "Defendants").

## INTRODUCTION

1. Plaintiff brings this case pursuant to the Family and Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601 et. seq. for interference and retaliation.

2. Plaintiff also asserts that Defendant Elixir discriminated against him in violation of the Title 7 of the Civil Rights Act of 1964 as amended.

1

3. Plaintiff is in the process of filing a Charge of Discrimination with the EEOC.

4. Once Plaintiff has received his EEOC notice of right to sue he will seek to amend this Complaint to include an additional count(s).

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the case pursuant to the FMLA 28 U.S.C. § 1331 (federal question jurisdiction).

6. Venue for this case lies with this Court pursuant to 29 U.S.C. § 1391 (b) (1) and (2) because a substantial part of events or omissions giving rise to the claims occurred within the jurisdiction of this Court and because Defendants are located in this District and is subject to personal jurisdiction in this District.

## PARTIES

7. Plaintiff is and was at the times relative to this Complaint a citizen and resident of Axson, Georgia.

8. Plaintiff is a former employee of Defendants having worked for Defendants from on or about April 16, 2018 until Defendants terminated him on August 21, 2019.

9. Defendant Elixir is a manufacturer of manufactured housing doors and it also provides metal manufacturing services.

10. Defendant Elixir employed Plaintiff as Accounting Manager at 1215 Pope Drive, Douglas, Georgia 31533.

11. During the relevant period of time, Defendant Elixir employed Defendant Blackmon as its Controller.

12. Defendant Elixir conducts business within Georgia, and this District, and in the states of Texas and Alabama.

13. Upon information and belief, Defendant Elixir employed at least 50 employees within 75 miles of the worksite at which Plaintiff was employed.

14. At the time of Plaintiff's termination, Defendants each were an "employer" covered by the FMLA.

15. At the time of Plaintiff's termination, Plaintiff was an "eligible employee" under the FMLA.

16. Defendant Elixir, according to the website of the Secretary of State of Georgia, is a foreign profit corporation, and lists its principal office address is 4944 Banister Place, Marietta, Georgia 30068.

17. For purposes of this lawsuit, Defendant Elixir may be served at CT Corporation System, 289 S. Culver St., Lawrenceville, Georgia 30046.

18. For purposes of this lawsuit, Defendant Blackmon may be served at 341 Upper Ty Ty Road Tifton, Georgia 31793.

**GENERAL ALLEGATIONS**

19. As Accounting Manager, Plaintiff oversaw payroll, accounts receivable, accounts payable, and the front desk receptionist. Plaintiff's duties included posting journal entries to the general ledger, reconciling accounts, and overseeing finance transactions at the division level for four of Defendant Elixir's locations.

20. Defendant Blackmon hired Plaintiff as Defendant Elixir's Accounting Manager with a starting salary of $55,000 plus bonus and benefits.

21. Once Plaintiff began working for Defendant Elixir, Defendant Blackmon became his supervisor.

22. As Plaintiff's supervisor, Defendant Blackmon had direct responsibility for the supervision of Plaintiff, had authority to hire and fire Plaintiff, and had control over the terms and conditions of Plaintiff's employment, including compensation.

23. Additionally, Defendant Blackmon was involved in the day to day operation of Defendant Elixir's functions with respect to his position as Controller.

24. In February 2019, an employee ("Employee A") who reported to Plaintiff complained to him that Defendant Blackmon would watch pornography in his office when she was in there and she was uncomfortable.

25. Employee A's sexual harassment complaint was brought to Defendant Elixir's Human Resource Manager Kristie Langston ("HR Manager Langston").

26. HR Manager Langston reported the complaint to her supervisor, Theresa Homer. HR Manager Langston later informed Plaintiff that Ms. Homer would not investigate the claim.

27. On May 21, 2019, Defendant Blackmon contacted Plaintiff at 5:00a.m. because he was on the side of the road and needed Plaintiff to change his tire.

28. As a dutiful employee, Plaintiff drove to his family's car business and took a tire and rim from the business and drove 40 minutes to Defendant Blackmon and changed Defendant Blackmon's tire. Defendant Blackmon never returned the tire and rim.

29. Later that same day, Plaintiff's wife, two small daughters, and mother-in-law were in a horrific car accident resulting in Plaintiff's mother-in-law's death and injures to his wife and daughters. Plaintiff's wife and daughters were admitted to Trauma ICU at Shands Jacksonville Medical Center. Shortly, thereafter, Plaintiff's daughters were transported to Wolfson Children's Hospital and discharged several days later. Plaintiff's wife remained hospitalized at Shands Hospital undergoing multiple surgeries.

30. Plaintiff's wife's injuries included, but were not limited to, complex fractures to both wrists, right femur, right tibia and fibula at the knee as well as a shattered right ankle.

31. The injuries of Plaintiff's wife and/or daughters met the definition of serious health condition under the FMLA and qualified Plaintiff to take leave under the FMLA to take care of her and/or them.

32. On or about May 23rd or 24th, Plaintiff contacted HR Manager Langston to request FMLA leave so that he could take care of his family.

33. HR Manager Langston provided Plaintiff with FMLA paperwork to be filled out by hospital staff and returned to her. Plaintiff had the paperwork filled out by the hospital staff and faxed back to HR Manager Langston.

34. Plaintiff met all obligations regarding submitting required FMLA paperwork to Defendant Elixir.

35. On or about May 24th or 25th, Defendant Blackmon came to Wolfson Children's Hospital and told Plaintiff that he was under great stress from his boss, Craig Shilling, to meet deadlines and that therefore, Defendant Blackmon needed Plaintiff to return to work to complete the monthly closing process. Defendant Blackmon told Plaintiff that he could take leave intermittently and that Defendant Elixir would provide him with a laptop so that he could work remotely.

36. Defendant Blackmon was aware of Plaintiff's need for FMLA leave and the circumstances surrounding that need.

37. Yet, as Defendant Blackmon requested, on June 2, 2019, Plaintiff returned to the office and completed the duties necessary so that Defendant Elixir closed the month of May.

38. Plaintiff then returned back on FMLA leave to take care of his daughters who had been released from the hospital but needed follow-up appointments and to take care of his wife who remained hospitalized and was not released until mid-June.

39. At some point at the end of June, Defendant Blackmon came to Plaintiff's home and asked him to, again, come to the office to help with the quarter end close details. Plaintiff asked whether he could perform the duties on the laptop that Defendant Blackmon had offered Plaintiff a month prior. Defendant Blackmon stated that the laptop had not arrived yet and that Plaintiff needed to return to the office.

40. Again, as requested by Defendant Blackmon, on June 26, 2019, Plaintiff returned to the office and began the financial closing process.

41. While Plaintiff was at work, Plaintiff's wife, who was at home recovering from her horrific injuries, fell while being cared for by a sitter. Plaintiff then told Defendant Blackmon and HR Manager Langston that he could not complete his leave intermittently and that he needed be at home to take care of his wife.

42.     Defendant Blackmon responded that before Plaintiff could continue his FMLA leave at home to care for his severely injured wife, Plaintiff needed to finish the final journal entry which was needed to complete the financials and handle a personnel matter.

43.     The personnel matter involved an incident among three employees that had occurred in June when Plaintiff was out of the office on leave.  One of the three employees was Employee A – the employee who had previously complained about Defendant Blackmon watching pornography while she was in his office.

44.     Defendant Blackmon wanted Plaintiff to suspend Employee A.  Plaintiff, however, was not comfortable suspending Employee A without any grounds warranting a suspension.  Plaintiff asked Defendant Blackmon if he could go through HR Langston to determine how to handle the situation and Defendant Blackmon agreed.

45.     Therefore, on July 2, 2019, Plaintiff again returned to work from leave to finish closing the financials and handle the personnel matter.  Plaintiff met with HR Langston to determine how to handle the incident and was instructed to give each of the three employees a write-up, including Employee A.  HR Langston told Plaintiff that anything greater than a write-up for Employee A was not advisable.  Therefore, Plaintiff handled the matter as he was instructed by HR Manager Langston.

46. Also, on July 2, 2019, Plaintiff finally received the company laptop that IT had set up for him to access company e-mail and documents from home.

47. The next day, on July 3, 2019, Defendant Blackmon learned that Plaintiff had not suspended Employee A and texted Plaintiff questioning Plaintiff's refusal to suspend her. Plaintiff told him that there was no evidence to suspend Employee A and he was following HR Langston's instructions to give her a write-up. Thereafter, Plaintiff attempted to contact Defendant Blackmon multiple times through his office and cell phones and text message about not suspending Employee A but Defendant Blackmon refused to respond to Plaintiff.

48. Then on July 7, 2019, Defendant Blackmon texted Plaintiff instructing him to bring the laptop back to the office and Plaintiff did so on July 8, 2019. While at the office Defendant Blackmon asked Plaintiff to post the final closing activities.

49. Later that evening, Plaintiff texted Defendant Blackmon that Defendant Elixir's server was down and that he could not log in remotely. Defendant Blackmon told him to bring back the laptop and leave it at the office. Defendant Blackmon did not tell Plaintiff why he was required to bring the laptop into the office.

50. On July 16, 2019, HR Langston requested that Plaintiff return to work to sign paperwork after Employee A resigned her employment. Again, Plaintiff did as he was requested and returned to the office. While he was there, he e-mailed IT Manager, Rhonda Willis ("IT Manager Willis"), and told her that he had purchased

a laptop himself and inquired about the process for getting his personal laptop set up to perform work from home.

51. The computer set-up for which Plaintiff was seeking approval was identical to the set-up that Defendant Blackmon had already approved for the company laptop he gave to Plaintiff.

52. IT Manager Willis approved his request. However, unbeknownst to Plaintiff, Defendant Blackmon told IT Manager Willis that he would not approve it.

53. Thereafter, HR Manager Langston informed Plaintiff via e-mail that his FMLA leave would run through August 20, 2019 and that his return to work date was August 21, 2019.

54. On August 21, 2019, Plaintiff returned to work and Defendant Blackmon terminated Plaintiff. Defendant Blackmon stated that he was terminating Plaintiff because Plaintiff had not suspended Employee A and instead had followed HR Langston's instruction to give her a write-up and because he "tried to go around him" by asking IT Manager Willis about the process for setting up his personal laptop.

55. Prior to terminating Plaintiff, Defendants had never given Plaintiff a write-up or disciplined him for any improper behavior.

56. Prior to terminating Plaintiff, Defendant Blackmon never told Plaintiff that he was not permitted to ask IT Manager Willis what approvals would be

necessary to get access to the company from his personal laptop – the same access Defendant Blackmon had previously given him – so that he could perform the work Defendant Blackmon was requiring that he perform while on FMLA leave.

57. Prior to terminating Plaintiff, Defendant Blackmon agreed that Plaintiff should seek HR Langston's advice on how to handle the personnel matter and Plaintiff handled it exactly as HR Langston instructed him to do.

58. Because Plaintiff was directed to continue working for a portion of his leave, Plaintiff was unable to take the full 12 weeks of leave permitted by the FMLA.

59. Plaintiff demands a jury trial.

## FMLA INTERFERENCE AND RETALIATION

60. Plaintiff repeats and incorporates by reference the above paragraphs above as set fully herein.

61. Plaintiff asserts that Defendants interfered with his FMLA leave by requiring him to work during his leave preventing Plaintiff from taking the full amount of leave to which he was entitled and by terminating Plaintiff for taking leave.

62. Defendants considered his request for and use of protected leave as a reason to interfere with his FMLA rights and terminate his employment in violation of the FMLA.

63. Defendants retaliated against Plaintiff for exercising his rights under the FMLA in violation of the FMLA by requiring him to work during his leave and terminating him for taking protected leave.

64. Defendants' actions of interfering with Plaintiff's right to take leave under the FMLA and retaliating against him in violation of the FMLA were committed with reckless disregard for Plaintiff's protected rights under the FMLA.

65. Wherefore, Plaintiff demands to be reinstated; recovery of lost wages, bonuses, and benefits, including but not limited to 401k match and health benefits; front pay and benefits; liquidated damages; and attorneys' fees and expenses.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays judgment in his favor in the form of an Order of this Court:

A. Awarding Plaintiff damages including, but not limited to, front pay, back pay, lost wages, bonuses, and all other employment benefits to be determined at trial;

B. Awarding Plaintiff liquidated damages;

C. Awarding Plaintiff reinstatement;

D. Awarding Plaintiff reasonable attorneys' fees and expenses;

E. Awarding Plaintiff any further relief permitted under law; and

F.  Awarding Plaintiff any further relief as the Court deems just and proper.

Respectfully submitted this 15th day of October, 2019.

                        MARTIN & MARTIN, LLP

          By:   /s/Thomas F. Martin
                 Thomas F. Martin
                 tfmartinlaw@msn.com
                 Georgia Bar No. 482595

                 MARTIN & MARTIN, LLP
                 Post Office Box 1070
                 Tucker, Georgia 30085